UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| EPIC SPORTING GOODS, INC. | CIVIL ACTION NO. 09-1981 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| FUNGOMAN LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before this Court is a Motion to Dismiss [Record Document 15] filed on behalf of Defendants Fungoman LLC ("Fungoman"), James Romulo Cucjen ("Cucjen"), and Dennis Randall Duron ("Duron") (collectively referred to as "Defendants"), and a Motion to Exclude [Record Document 42] filed on behalf of Plaintiffs Epic Sporting Goods, Inc. ("Epic") and Thomas L. Wilmot ("Wilmot").

Defendants seek dismissal of Plaintiffs' Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing[1] as it is undisputed that the Patent Assignment Agreement at issue was not executed by Plaintiffs until December 11, 2009—11 days after Epic initiated the instant litigation. After reviewing the parties' memoranda, the Court requested supplemental briefs and heard oral arguments on the issue of standing, particularly the issue of whether the subsequent execution of the Patent Assignment Agreement was sufficient to retroactively confer standing on Epic.

---

[1] Defendants also seek dismissal of Plaintiffs' Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Because the Court finds that it lacks subject matter jurisdiction and that dismissal is warranted pursuant to Rule 12(b)(1), this ruling will not address Defendants' Rule 12(b)(6) arguments.

See Record Documents 40, 41, and 47.  Prior to oral arguments, Plaintiff filed a motion to exclude the original Complaint for Patent Infringement [Record Document 1] from deliberations, asserting the Amended Complaint [Record Document 7] renders it of no legal effect.  See Record Document 42.  Because the procedural issue raised in Plaintiffs' motion to exclude is extricably intertwined with the substantive issue of standing, Plaintiffs' motion to exclude [Record Document 42] is **DENIED.**  Furthermore, for the reasons stated herein, Defendants' Motion to Dismiss [Record Document 15] is **GRANTED**, and this case shall be **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1).

## FACTUAL BACKGROUND

On August 1, 2006, U.S. Patent 7,082,938 B2 ("the '938 Patent"), entitled "Baseball Fielding Practice Machine," was duly and legally issued in the name of Thomas Wilmot.  [Record Document 15, Ex. A].  On November 30, 2009, Plaintiff Epic Sporting Goods ("Epic") filed a Complaint for Patent Infringement [Record Document 1] against Defendants ("Fungoman"), James Romulo Cucjen ("Cucjen"), and Dennis Randall Duron ("Duron") (collectively referred to as "Defendants").  Epic asserts it "is the owner by assignment of all right, title, and interest in and to" the '938 patent and alleges Defendants are liable for literal infringement of the '938 Patent (Count One), infringement by application of the doctrine of equivalents (Count Two), and that Defendants' actions have been willful and deliberate (Counts Three and Four).  [Record

Document 1]. On February 2, 2010, Epic amended its Complaint to name Thomas L. Wilmot as an additional Plaintiff. [Record Document 7].

Defendants now move for dismissal of this action pursuant to Rule 12(b)(1) because Epic did not have any rights, title, or interest in and to the '938 Patent on November 30, 2009, the date on which the original complaint was filed, and therefore lacked standing to bring this action. Defendants point to the Patent Assignment Agreement whereby Wilmot assigned "all right, title, and interest in, to, and under" the '938 Patent to Epic, which contains a draft date of November 16, 2009, but was not actually executed by the parties until December 11, 2009—11 days after Epic filed suit against Defendants for patent infringement. See Record Document 23, Exhibit 6. Plaintiffs oppose this motion. See Record Documents 23 and 41.

## LAW AND ANALYSIS

Motions to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Therefore, lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Barrera-

Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996); Williamson, 645 F.2d at 413.

Where a defendant's 12(b)(1) motion to dismiss challenges the plaintiff's standing to bring suit, the plaintiff—as the party invoking federal jurisdiction—bears the burden of establishing three "irreducible constitutional minimum" elements: (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent; (2) a casual connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury. Little v. KPMG LLP, 575 F.3d 533, 540 (5th Cir. 2009) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  Ordinarily, a district court considering a motion to dismiss "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Lewis v. Knutson, 699 F.2d 230, 237 (5th Cir. 1983) (quoting Warth v. Seldin, 422 U.S. 490, 501-02, 95 S.Ct. 2197, 2206-07, 45 L.Ed.2d 343 (1975)).  However, standing "often turns on the nature and source of the claim asserted." Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007) (quoting Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).  In such cases, the question "is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." Id.; see also, Int'l Primate Prot. League v. Admins. of Tulane Educ. Fund, 500 U.S. 72, 76, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991) ( "[S]tanding is gauged by the specific common-law, statutory or constitutional

claims that a party presents."); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 484, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("The requirement of standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.' "). Thus, in an action for patent infringement, the Court must look to the patent statutes which create the cause of action, as they also define the nature and scope of patent infringement claims and the person that is entitled to judicial relief. See id.

Title 35 of the United States Code, Section 281 provides that a "patentee" is entitled to bring a "civil action for infringement of his patent." A "patentee" is defined under the statute as "not only the person to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d); see also, Propat Intern. Corp. v. Rpost, Inc., 473 F.3d 1187, 1189 (Fed. Cir. 2007); Morrow, 499 F.3d at 1339. These provisions of the Patent Act have generally been interpreted to require that a suit for infringement of patent rights be brought by a party holding legal title to the patent at the time of the infringement. Propat, 473 F.3d at 1189; Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1579 (Fed. Cir. 1991) ("The general rule is that one seeking to recover money damages for infringement of a United States patent . . . must have held the legal title to the patent during the time of the infringement.") (emphasis in original). The party holding legal title has "the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States." 35 U.S.C. § 154(a)(1). If these exclusionary rights

are violated, it is only the party holding legal title who suffers an "injury in fact" and has standing to assert a claim for infringement.  See Morrow, 499 F.3d at 1339 ("Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights.").  As the Supreme Court has long recognized:

> With a single exception the plaintiff in an action at law must be the person or persons in whom legal title to the patent resided at the time of the infringement.  An infringement is an invasion of the monopoly created by the patent, and the law which defines and authorizes this monopoly confers only upon its legal owners the right to institute proceedings for its violation.  These owners are the patentees, his assignee, his grantee, or his personal representatives; and none but these are able to maintain an action for infringement in a court of law.  Moreover, the injury inflicted by an act of infringement falls upon the individual who owns the monopoly at the date of the infringement.  It does not affect former owners whose interest had terminated before the infringement was committed, nor does it so directly prejudice a future owner that the law can recognize his loss and give him a pecuniary redress.  Hence the plaintiff must not only have a legal title to the patent, but must have also been its owner at the time of the infringement.

Crown Die & Tool Co. v. Nye Tool & Mach. Works, 261 U.S. 24, 40-41, 43 S.Ct. 254, 258, 67 L.Ed. 516 (1923) (quoting Robinson on Patents, Vol. 3, § 937); see also, Arachnid, 939 F.2d at 1579.

The "single exception" referred to arises where an assignment of a patent is coupled with an assignment of a right of action for past infringements.  Id., 261 U.S. at 43, 43 S.Ct. at 259.  Under this exception, where the relevant instrument "is effective to make the plaintiff an assignee," the plaintiff can maintain an action for damages for

infringements occurring prior to the assignment.  Id.  Here, the Patent Assignment Agreement ("Assignment") at issue expressly provides Epic "all rights of action arising from the Patent," including "all claims for damages by reason of past and future infringement." [Record Document 23, Exhibit 6 ¶ 2].  Nevertheless, in order to avail itself of this "single exception", Epic must first demonstrate that it held legal title to the '938 Patent on the date this action was commenced.[2]

Epic asserts that the effective date of the Assignment is November 16, 2009, the type-written date shown on the face of the document, but it is undisputed that Epic and Thomas Wilmot did not execute the Assignment until December 11, 2009—11 days after Epic commenced this action.  See Record Document 23, Exhibit 6; Record Document 49, Exhibits A and B.  Under prevailing jurisprudence, nunc pro tunc

---

[2]The issue of whether a party claiming infringement must have standing to bring the claim at the time it is pled has been considered in a number of courts.  Although some courts have found that not allowing subsequent events to cure standing defects would only "exalt form over substance," see e.g., Valmet Paper Mach., Inc. v. Beloit Corp., 868 F.Supp. 1085, 1089-90 (W.D.Wis. 1994); Ciba-Geigy Corp. v. Alza Corp., 804 F.Supp. 614, 635 (D.N.J. 1992), reconsideration denied, 1993 WL 90412 (D.N.J. 1993), compelling policy rationales have urged the majority of courts, including the Federal Circuit, to hold that a party's standing to maintain a patent infringement claim must be determined by that party's rights on the day the claim was filed.  See e.g., Galen Med. Assoc., Inc. v. U.S., 74 Fed.Cl. 377 (Fed. Cir. 2006); Schrieber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 (Fed. Cir. 2005); Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309 (Fed. Cir. 2003); Switzer Bros., Inc. v. Byrne, 242 F.2d 909, 913 (6th Cir. 1957); Procter & Gamble Co. v. Paragon Trade Brands, Inc., 917 F.Supp. 305, 309-310 (D.Del. 1995); Quiedan Co. v. Cent. Valley Builders Supply Co., Inc., 1993 WL 451503, *1-2 (N.D.Cal 1993), aff'd, 31 F.3d 1178 (Fed. Cir. 1994); Arachnid, 939 F.2d at 1579; Afros S.p.A. v. Krauss-Maffei Corp., 671 F.Supp. 1402, 1445 (D.Del. 1987), aff'd, 848 F.2d 1244 (Fed. Cir. 1988).

assignments of patent rights are not sufficient to confer retroactive standing. As the Federal Circuit has stated:

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998) and Gaia Tech., Inc. v. Reconversion Tech., Inc., 93 F.3d 774, 779-80 (Fed. Cir. 1996) (quoting Procter & Gamble, 917 F.Supp. at 310); compare Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1210-11 (Fed. Cir. 1998) (nunc pro tunc assignment of the right to sue for past infringement was irrelevant because the assignment was not being used to cure deficient standing). Epic has not disputed the substance of Defendants' legal arguments, nor has it given the Court reason to stray from the strong rationale espoused by the Federal Circuit.[3]

---

[3] Plaintiff argues state law governs the effective date of the Assignment and that, under Alabama law, the effective date of the Assignment is November 16, 2009. See Transcript of January 14, 2011 Oral Arguments and Record Document 49. The Court and Defendants agree with Plaintiff that state law generally governs the validity and enforcement of a contract and that the Court must look to state law to determine the ownership of a patent. Plaintiff's argument is misplaced, however, as it fails to recognize the distinction between the effective date of the Assignment as it relates to

Epic's Amended Complaint [Record Document 7] naming Thomas Wilmot as a Plaintiff in these proceedings is likewise insufficient to confer retroactive standing.  Epic lacked a cognizable injury necessary to establish standing under Article III of the Constitution to confer subject matter jurisdiction upon the district court at the inception of this lawsuit, and such a defect in standing can be cured neither by a subsequent assignment nor a subsequent amendment of the pleadings.[4]  See Paradise Creations, 315 F.3d at 1309-10 (holding that defect in standing could not be cured by joining the patentee as an additional plaintiff where the original plaintiff "held no enforceable rights whatsoever in the patent at the time it filed suit"); Lans v. Digital Equip. Corp., 252 F.3d 1320, 1328-29 (Fed. Cir. 2001) (affirming district court's denial of motion to amend the pleadings where original complaint included erroneous allegations that plaintiff was the owner of the patent); Quiedan Co., 1993 WL 451503, *2 (holding that where plaintiff lacked standing to sue, the court lacked jurisdiction to join individual as a

---

(1) whether the Assignment is valid and enforceable as between the parties (a matter of state law), and (2) whether Plaintiff had Article III standing to assert a cause of action for patent infringement (a matter of federal law).  See e.g., Paradise Creations, 315 F.3d at 1310.  Consequently, the cases cited to and relied on by Plaintiff during Oral Arguments and in its Reply Memorandum are irrelevant to the issue before the Court.

[4]The Federal Circuit has made it clear that:

> In the area of patent infringement, . . . if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing, nor by the subsequent purchase of an interest in the patent suit.

Schreiber Foods, Inc., 402 F.2d at 1203 (internal citations omitted).

party to the action); see also, Fed. Recovery Serv., Inc. v. U.S., 72 F.3d 447, 453 (5th Cir. 1995) (Rule 15 does not allow a plaintiff to amend its complaint to substitute a new plaintiff in order to cure the lack of subject matter jurisdiction); Summit Office Park, Inc. v. U.S. Steel Corp., 639 F.2d 1278, 1282 (5th Cir. 1981) ("where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action"); Jackson v. Fid. Nat. Title Ins. Co., 2008 WL 508489, *3 (N.D.Tex. 2008) ("without standing to bring suit, the plaintiff lacks the power to bring in a new plaintiff and continue the litigation").

## CONCLUSION

Accordingly, the Court finds that Epic did not have legal title to the '938 Patent at the inception of this lawsuit and that the subsequent execution of the Patent Assignment Agreement and filing of the Amended Complaint were insufficient to confer retroactive standing. Consequently, the Court lacks subject matter jurisdiction over Epic's claims for patent infringement against Defendants, and this action must be **DISMISSED WITHOUT PREJUDICE.**

An Order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 10th day of February, 2011.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE